ANNA RUTH BRYSON, Appellant-Employee,

*v.*

CLETUS BENTON, d/b/a HOLIDAY INN RESTAURANT
and FIDELITY AND CASUALTY COMPANY OF NEW YORK,
Appellees-Employer.

395 S.W.2d 794.

(*Knoxville,* September Term, 1965.)

Opinion filed November 1, 1965.

CONRAD FINNELL, Cleveland, for appellant, FINNELL & THOMPSON, Cleveland, of counsel.

ALVIN YORK BELL, Chattanooga, for appellees, NOONE, MOSELEY & BELL, Chattanooga, of counsel.

MR. JUSTICE DYER delivered the opinion of the Court.

This is a Workmen's Compensation case presenting the question of whether tips received by a waitress in a public restaurant shall be considered in computing her average weekly wages. The Chancellor, in his memorandum, on this point said:

It was earnestly insisted by petitioner's counsel that these wage payments should be supplemented by tips received by petitioner and thus arrive at the average weekly wages for the purpose of compensation in this cause. The Court rejected all testimony with reference to tips at the hearing, being of the opinion that tips could not be considered in determining the average weekly wages as contemplated by law in such cases. (Chancellor's Memo)

■ There is on the point here at issue one Tennessee case, which we will go into in some detail later in this opinion, but first, we will examine authority from other jurisdictions.

Larson's Workmen's Compensation Law, sec. 60.12, states the general rule as to what is included in the wages in this manner:

In computing actual earnings as the beginning point of wage basis calculations, there should be included not only wages and salary but anything of value received as consideration for the work, such as tips, and bonuses, and room and board constituting real economic gain to the employee.

In the case of *Sloat et al. v. Rochester Taxicab Co. et al.*, 177 App.Div. 57, 163 N.Y.S. 904 (1917), the injured employee was a taxi driver receiving about 85 cents per day in tips and such was known by the employer. The court said:

It is common knowledge that porters on sleeping cars are employed at inadequate wages, and that the employer and employe recognize that the great part of the service rendered by the employe is to be paid by the patrons of the company. The same is true as to waiters in the restaurants and the attendants at the hat stands, the bell boys, and others serving patrons at hotels. The tip is so usual and the amount so uniform that the employer and employe realize about how much in addition to the tips it will be necessary for the employer to pay the employe to give him reasonable compensation. The whole theory of tipping, as at present understood in the usual practice, is a payment made in order to get reasonable service, and is an exaction made or per-

mitted by the employer, so that his patrons shall help him pay the wages which is fairly due from him to his employe. The custom and the manner in which the payment of tips is enforced and practiced leads inevitably to the conclusion that in substance the tips received are a part of the wages of the employe, and are advantages received by the employe from the employer as a part recompense for services rendered.

The court should treat these tips in the same manner in which the employer and employe treat them, as a part of the compensation to be received by the employe for the services rendered the employer, a part of the wages, a part of the average annual earnings of the employe.

163 N.Y.S. 904.

In Powers' Case, 275 Mass. 515, 176 N.E. 621, 75 A.L.R. 1220 (1931), the employee was a waitress in a restaurant receiving $8.00 per week salary and $12.00 average in tips. In holding her average weekly wages, under the act, were $20.00 the court held:

It seems plain that from the standpoint of the employee the tips in the case at bar were in the nature of wages or earnings. The stipend paid to her by the employer was the smaller part of the actual income received by her as a consequence of her labor for him. The situation was fully understood and freely assented to by the employer. There was no deception. No divided duty was thereby created on the part of the employee. Her loyalty to the employer was not alloyed by the courtesy and efficiency rendered to patrons which were the basis of their gratuities to her. As to each customer of the employer the tip to the employee was a gift and not

founded on an obligation, but the aggregate thus received was dependable although fluctuating according to the amount of patronage coming to the employer. Service may be rendered upon a reasonable expectation of reward without forming the basis of a debt. The tips were in the nature of part payment for the service received by the patrons at the place of business of the employer. Payments made to his employee by his patrons with the approval of the employer, under the protection of his place of business and for his benefit, bear a close analogy to wages paid by him. There was nothing illegal in the retention of tips by the employee in these circumstances. If the employer had established a rule of his restaurant forbidding tips, the direct wage expense to him probably would have been increased to make up in substance for the loss in revenue to the employees and that doubtless would have been reflected in an increase in the prices charged to patrons. The employer, in effect, saved in direct outgo for wages the amount received by the employee in tips. * * *

It hardly needs to be added that this decision is confined strictly to the facts here disclosed. 275 Mass. 515, 176 N.E. 621.

Gross' Case, 132 Me. 59, 166 A. 55 (1933) involved a restaurant waitress and there was a holding similar to the Powers' Case.

In *Larochelle v. Hickory House, Inc.*, 80 R.I. 334, 96 A.2d 830 (1953) the court used the following language:

[W]e are in agreement with the great weight of authority which holds that in certain employments the nature of the contract between employer and employee is such that tips are considered by both as part of the

compensation which the employee receives for his services.

\* \* \* \* \* \*

We cannot overlook the fact that in certain employments, such as waiters, porters, bellboys, and taxicab drivers, among others, tips are customary and have come to be considered, with the knowledge and consent of the employer, as part of the wages for service rendered by the employee. In such instances the patrons help the employer to pay the wages which are fairly due from him to the employee.

\* \* \* \* \* \*

However, the inclusion of tips as wages is limited to those employments where the circumstances thereof disclose, either expressly or by reasonable inference, that it is understood and assented to between employer and employee that the tips received by the latter shall be retained by him as part of the wages for the service that he is required to perform. Each case must therefore rest on its own particular facts.

\* \* \* \* \* \*

It is true that the amount received in tips cannot be determined in advance and to that extent they are uncertain and speculative, but at the end of the working time, whatever that period may be, the hourly rate of the tips for the service rendered can be readily determined.

80 R.I. 334, 96 A.2d 830.

■ Tips, of course, should not always be considered as part of the average weekly wage. *Begendorf v. Swift & Co.,* 193 App. Div. 404, 183 N.Y.S. 917 (1920), serves as an example. In that case a truck driver for a meat con-

cern received tips when making deliveries to his employer's customers, but the employer had no knowledge of the gratuities, and there was no evidence of custom to give tips to persons engaged in such business. The court said: An employee who secretly receives gratuities from other persons without the knowledge or consent of his employer may not have them added to wages for the determination of the amount of compensation. 183 N.Y.S. 917.

In the cases of *Anderson v. Horling et al.,* 214 App.Div. 826, 211 N.Y.S. 487 (1925), and *Ferro v. Leopold Sinsheimer Estate, Inc.,* 256 N.Y. 398, 176 N.E. 817 (1931), it was held that gratuities or tips received by the employee cannot be considered as wages when it was not understood as such by the parties in making the contract of employment.

58 Am.Jur. Workmen's Compensation Sec. 314, p. 798, states the general rule as follows:

It may be stated as a general rule that where it was within the contemplation of the parties that tips received by an employee should be retained by him as a part of his compensation, tips should be taken into consideration in determining the amount of his earnings, or wages, for the purpose of allowing compensation under workmen's compensation acts for an injury or death. But the rule does not extend, ordinarily, to tips or gratuities which are illicit, or which involve or encourage a neglect or breach of duty on the part of the employee to his employer, or which are casual or sporadic, and trivial in amount. '

The Tennessee case, in point on the issue here, is *Crane Co. v. Jamieson,* 192 Tenn. 41, 237 S.W.2d 546 (1951). Larson in his work Workmen's Compensation Law cites

this case as being contra to the general rule. This case does hold "meals and tips" were not to be included in determining "average weekly wage," but under a careful reading of the opinion it is apparent this holding applies only to the facts of this case. The court after noting, under the evidence, neither the employee or employer considered "meals and tips" to be a part of the wage contract said:

> \* \* \* and also for the reason that under a proper construction of "wage" as used in Code sec. 6878(c), "meals and tips" were not a part of the wage contract *in the present case,* \* \* \* (emphasis supplied) 192 Tenn. 46, 237 S.W.2d 548.

The reasoning in the Crane case is, since the employee and employer both treated "meals and tips" as not a part of the wage contract, then the Court would so treat them.

T.C.A. Sec. 50-902(c) defines "average weekly wages" and the last sentence of this sub-section is as follows:

> "Wherever allowances of any character made to any employee in lieu of wages are specified as a part of the wage contract, they shall be deemed a part of his earnings." 50-902(c).

In the case *sub judice* it is apparent the receiving of tips by a waitress in a public restaurant would not in any way involve disloyalty to her employer. Further the Court will take judicial notice of the fact, it is customary in public restaurants, to tip waitresses. We do not make these statements to decide the case but to exclude some problems.

■■ The employer, in the case *sub judice,* operated a Holiday Inn Restaurant, consisting of two areas for the

service of food to the public, one called the Dining Room and the other the Coffee Shop. In employing waitresses the employer had set the scale in the Dining Room at 50 cents per hour and in the Coffee Shop at 75 cents per hour. The employer explained the difference in the pay scale was due to the fact a waitress in the Dining Room would earn more in tips than one in the Coffee Shop, and such was the understanding of the waitresses. The employee testified she was hired at 50 cents per hour and told she could keep her tips, which she considered as a part of the inducement for her to work. The only reasonable inference we can draw from this evidence is both the employer and employee treated the tips to be received by employee as a part of the inducement for her to work and in fact would be a part of her wages. This being true these tips would be in ''lieu of wages'' as this phrase is used in T.C.A. 50-902(c), supra.

There are other assignments of error which we have considered and find without merit.

The cause is reversed and remanded for hearing of further evidence upon the single issue of the average weekly wage of appellant-employee with same to be computed including tips.