Colleen STURGILL, Employee Below,
Appellant,

v.

M & M, INC., Employer Below, Appellee.

M & M, INC., Employer Below, Appellant,

v.

Colleen STURGILL, Employee Below,
Appellee.

Supreme Court of Delaware.

Argued Sept. 16, 1974.

Decided Nov. 15, 1974.

William J. Alsentzer, Jr., Bayard, Brill & Handelman, Wilmington, for employee below.

Howard M. Berg, Berg, Komissaroff & Sawyer, Wilmington, for employer below.

Before DUFFY and McNEILLY, JJ., and BROWN, Vice Chancellor.

DUFFY, Justice:

We here consider cross-appeals from the Superior Court which reviewed an award by the Industrial Accident Board. Two issues are presented under the Workmen's Compensation Act: the compensability of that part of a disability attributed to psychogenic causes, and the exclusion of "tips" as wages in computing the compensation basis.

I

Claimant petitioned the Board for compensation under 19 Del.C. § 2326 for permanent physical impairment of her back and left leg resulting from an accident arising out of and in the course of her employment.[1]   Both parties agree that

1. 19 Del.C. § 2326 provides in part:
    "(a) For all permanent injuries of the following classes, the compensation to be paid regardless of the earning power of the injured employee after the injury shall be as follows:

For the loss of a leg, 66⅔ percent of wages during 250 weeks;

(g) The Board shall award proper and equitable compensation for the loss of any

claimant is entitled to some award, so the disputed issue is the percentage of disability. A neurologist, testifying for claimant, concluded that she had sustained a 50% back disability and an 80% leg disability; those figures were based on a consideration of both psychogenic and organic factors.[2] The Board's finding of 30% and 20% impairment of the back and leg, respectively, was based " . . . solely upon the percentage of physical and functional disability suffered by the claimant . . .". Relying on Burton Transportation Center, Inc. v. Willoughby, Del.Supr., 265 A.2d 22 (1970), the Board thus gave no weight to any disability resulting from psychogenic factors.

The Superior Court distinguished *Burton,* correctly, we think, from the instant case and ordered a remand. In *Burton* the employee sought recovery on the theory that a traumatic neurosis "is a partial loss of use of a 'part of the body' within the meaning of that term in § 2326(g)." Recovery was denied because the Court construed the term "as intended to refer to some specific identifiable member or organ of the body". In short, traumatic neurosis *per se* was determined to be not compensable under § 2326 which fixes compensation for certain "scheduled" injuries or losses. But it does not follow that psychogenic factors which cause scheduled losses are not compensable. On the contrary, we think they are.[3]

As the Court said in *Burton*, "*disability* resulting from traumatic neurosis is compensable", cf. Rice's Bakery v. Adkins, Del.Supr., 269 A.2d 215 (1970) and Ware v. Baker Driveway, Inc., Del.Super., 295 A.2d 734 (1972), aff'd, Del.Supr., 303 A.2d 358 (1973), and that includes a disability which is a scheduled loss specified in § 2326.

■ Here, there was evidence in the record which could lead the Board to conclude that the psychogenic overlay was related to identifiable parts of the body. Accordingly, the Superior Court correctly ordered the award vacated and remanded the case for further findings as to causal connection, first, between the accident and the psychogenic overlay and, second, between such overlay and a member of or organ of the body identifiable under § 2326.

II

The second issue raised in the appeal relates to "tips" as wages and, as to these, the Board Stated:

"Claimant was, at the time of the accident, a waitress. Her earnings, including gratuities, averaged between $125.00 and $150.00 per week. Her actual wages on the other hand, amount to $24.00 per week. That is she worked 48 hours per week and received from her employer $.50 per hour."

member or part of the body or loss of use of any member or part of the body up to 300 weeks which shall be paid at the rate of 66⅔ per centum of his weekly wages, . . . ."

2. "Psychogenic" here means, "Originating in the mind; caused by, or dependent upon, mental influences; as *psychogenic* nervous disorders as opposed to organic". Webster's New International Dictionary (2 ed.).

3. The employer's reliance on Williams v. Chrysler Corporation, Del.Supr., 293 A.2d 802 (1972), is misplaced. There the Board considered factors of occupation and work activities in making a permanent injury award

under § 2326. We agreed with the Superior Court that while such factors may be properly considered in proceedings under 19 Del. C. § 2324 and § 2325, it was error to consider them in a § 2326 application. See Ernest DiSabatino & Sons, Inc. v. Apostolico, Del.Supr., 269 A.2d 552 (1970). The prior sections are addressed to impairment of earning capacity, while § 2326 relates to general physical impairment or disability. The latter is no less real or compensable if it is caused by psychogenic factors resulting from a compensable accident. In brief, § 2326 requires a result (permanent and actual disability) and causation may be shown by organic or psychogenic factors (which follow from an industrial accident).

The Board concluded that $24.00 was the appropriate compensation basis under the statute and the Superior Court affirmed on the basis that tips were gratuities and thus excluded from consideration.

19 Del.C. § 2302(a) reads in part:

"The term 'wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It does not include gratuities received from the employer or others . . .."

■ Our duty is to read statutory language so as to avoid constitutional questionability and patent absurdity and to give the language a reasonable and suitable meaning. Opinion of the Justices, Del. Supr., 295 A.2d 718 (1972). The obvious intent of the Legislature in enacting § 2326 was that the Board award "proper and equitable compensation", 19 Del.C. § 2326(g), and that the method of computation fairly ascertain the earnings of an employee. 19 Del.C. § 2302(b). A finding that a waitress who earned $125 to $150 a week had "wages" of only $24 certainly does not square with that intent and assuredly would produce an unjust result.

We recognize that in many relationships a "tip" is regarded as a "gratuity" but it does not follow that the statute compels that equation in every case. Indeed, the undisputed facts, in our view, show beyond doubt that what the claimant here received from customers were not gratuities at all.

A "gratuity" in its ordinary, dictionary meaning is that which is given over and above what is due. It is "Something given freely or without recompense; a gift". *Webster*, supra; Black's Law Dictionary. It connotes something voluntarily or freely given over and above what is earned. In brief, a gift or gratuity is not what one earns—it is what he receives without earning.

■ Turning now to this case, it is beyond dispute that the claimant "earned" more than $24.00 for 48 hours of services. Since the employer paid her only 50¢ per hour, any amount of earnings in addition thereto necessarily came from tips. Common sense tells us that this employer did not simply agree to pay the claimant 50¢ and nothing more. (Indeed, Delaware law requires more. See 19 Del.C. § 902.) And the only reasonable conclusion from the undisputed facts is that any tips received by claimant were necessarily a very part of her contract of hiring.

We are not called upon to determine the nature or character of tips as between claimant and the employer's customers. To the latter, they may well have been (and are commonly) regarded as "gratuities" and not part of the purchase price for food and services. But our inquiry is to the relationship between employer and waitress and the only reasonable conclusion from the record is that the contract of hiring provided that claimant would receive as wages $24 per week plus tips. Under those circumstances tips are not "gratuities" within the meaning of § 2302(a).

Although it appears that in most jurisdictions tips received by a waitress are included in the compensation basis, see, e. g., Employers Commercial Union Insurance Co. v. Bryant, 130 Ga.App. 596, 203 S.E.2d 896 (1974) and cases cited therein, we recognize that such holdings are based on statutes different from § 2302. But see Coates v. Warren Hotel, 18 N.J.Misc. 363, 13 A.2d 787 (N.J.Comm.Pleas, 1940). However, a common denominator of the cases is the determination that tips, under circumstances similar to those here present, are bargained-for recompense between employer and employee and are implicit consideration for the contract of hire. Thus the Court said in Larochelle v. Hickory

House, Inc., 80 R.I. 334, 96 A.2d 830 (1953):

"[W]e are in agreement with the great weight of authority which holds that in certain employments the nature of the contract between employer and employee is such that tips are considered by both as part of the compensation which the employee receives for his services."

The same point was made in Sloat v. Rochester Taxicab Co., 177 App.Div. 57, 163 N.Y.S. 904, aff'd, 221 N.Y. 491, 116 N.E. 1076 (1917):

"The whole theory of tipping, as at present understood in the usual practice, is a payment made in order to get reasonable service, and is an exaction made or permitted by the employer, so that his patrons shall help him pay the wages which is fairly due from him to his employé. The custom and the manner in which the payment of tips is enforced and practiced leads inevitably to the conclusion that in substance the tips received are a part of the wages of the employé, and are advantages received by the employé from the employer as a part recompense for services rendered.

The court should treat these tips in the same manner in which the employer and employé treat them, as a part of the compensation to be received by the employé for the services rendered the employer, a part of the wages, a part of the average annual earnings of the employé."

See also Powers' Case, 275 Mass. 515, 176 N.E. 621, 75 A.L.R. 1220 (1931); Gross' Case, 132 Me. 59, 166 A. 55 (1933).

In short, this case falls under the general rule that when it is within the contemplation of the parties that tips are to be retained by an employee as part of his compensation, they are to be regarded as wages for compensation purposes. 58 Am.Jur., Workmen's Compensation § 314.

The judgment of the Superior Court is reversed under a mandate for further proceedings consistent with this opinion.